UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:25-cv-03191-WLH-MAR | Date | December 1, 2025 |
|---|---|---|---|
| Title | *Loc Huu Nguyen v. Kristi Noem et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Holidae Crawford | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [3]**

The Court is in receipt of Petitioner's *Ex Parte* Application for a Temporary Restraining Order (the "Application"). (Application, Dkt. No. 3). The Court is also in receipt of Respondent's Opposition (the "Opposition"). (Opp'n to Application, Dkt. No. 8). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. For the reasons explained herein, the Court **GRANTS** the Application in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision. The Court **DENIES** the Application's prayer for injunctive relief relating to Petitioner's removal claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

I.  **BACKGROUND**

   A.  **Statutory Background**

The detention and removal of noncitizens[1] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). *See* 8 U.S.C. § 1231. Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."[2] *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3). This suggests that, if a noncitizen is ultimately *not* removed, they will be placed under an Order of Supervision ("OSUP") upon release.

Certain noncitizens – including those who are removable due to certain criminal conduct – "may be detained beyond the removal period, and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6). In other words, although noncitizens under certain conditions may be detained beyond the removal period, once they *are* released, they must similarly be subject to supervision under the regulations prescribed by the Attorney General. Significantly, after the removal period passes and "after 'removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute,' [and] the noncitizens must be released." *Hoac v. Becerra*, No.

---

[1] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.
[2] Section 1231 provides that the "removal period shall be extended beyond a period of 90 days . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). There is no indication that this portion of Section 1231 is relevant for purposes of this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). In short, Section 1231 "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001).

The right to remain under an OSUP, however, is not unlimited. Revocation of an OSUP is governed by 8 C.F.R. §§ 241.13(i), 241.4(l).[3] Revocation of an OSUP may occur either: (1) if the noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Whether there is a significant likelihood that the alien may be removed in the reasonably foreseeable future is determined by assessing a series of factors, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries . . . and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." *Id.* § 241.13(f). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke

---

[3] The regulations themselves provide an explanation for the relationship between sections 241.4 and 241.13, though the distinction remains somewhat opaque. *See id.* § 241.13(b)(1). Section 241.13 specifically governs "special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [section] 241.4." *Id.* Section 241.13 further provides that "[s]ection 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* In short, Section 241.13 applies to cases where a petitioner is in revocation proceedings, whereas Section 241.4 applies to routine custody reviews for aliens detained after the 90-day removal period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

release and return to [] custody an alien previously approved for release under the procedures in this section."[4] *Id.* Whether revocation is in the public interest is assessed under four factors: "(i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.*

Significantly, there are "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and will receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.*

Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official.

//
//
//

---

[4] In situations where "referral of the case to the Executive Associate Commissioner" is not reasonable, a "district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest[.]" *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

  **B.**  **Findings of Fact**[5]

  Petitioner Loc Huu Nguyen ("Petitioner") was born outside of the United States in 1965.  (Petition at 4; *see also* Application, Decl. of Raj N. Shah in Support of TRO Application ("Shah Decl.") ¶ 3).  In 1985, Petitioner was lawfully admitted to the United States at the age of fifteen as a "P22" immigrant—an immigration avenue for children of permanent lawful residents.  (*Id.*).  He has remained in the United States since, securing employment and building a family of his own with several children.  (*Id.*).

  On April 27, 2010, an immigration court in Adelanto, California ordered the removal of Petitioner from the United States to Vietnam.  (Petition at 5).  Petitioner was subsequently detained by ICE for approximately two months from April 27, 2010, to July 26, 2010.  (*Id.*).  During that period, ICE attempted to secure travel documents for Petitioner to facilitate his removal to Vietnam without success.  (*Id.*).  Because Petitioner "entered the United States ON 12/19/1980, [he] [wa]s not covered" under the operative Memorandum of Understanding signed by Vietnam and the United States.  (Petition, Ex. A at 4) (emphasis in original).  Consequently, ICE officials concluded that "travel document issuance [wa]s NOT likely to occur in the reasonabl[y] foreseeable future."  (*Id.*).  That finding was reaffirmed on July 22, 2010, when ICE officials recommended Petitioner be released on supervision, noting his "strong family support and community ties" that would "enable him to secure employment and re-establish himself in the community."  (Petition at 5, Ex. B).  From July 26, 2010, to October 2025, Petitioner was released under an OSUP pending his removal from the United States.  (Petition at 5).  However, on October 21, 2025, Petitioner was detained by ICE without justification: "he was never given any notice that his order of release on supervision had been revoked nor

---

[5] For its findings of fact, the Court relies on the allegations included in Petitioner's Petition for Writ of Habeas Corpus (the "Petition") (*See* Dkt. No. 1) and Petitioner's Application (Dkt. No. 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

given a statement of reasons as to why it had been revoked." (*Id.* at 6; Shah Decl. ¶ 3).[6] Petitioner has yet to receive an interview or another opportunity to be heard about the revocation of his order of supervision. (*Id.*). To date, ICE has not provided Petitioner with any travel documents or other information about whether they have secured such documents. (*Id.*). Petitioner remains detained at the Desert View Facility in Adelanto, California. (*Id.*).

II. DISCUSSION

    A. <u>**Legal Standard**</u>

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In determining whether to issue a TRO, courts apply the four *Winter* factors (the "*Winter* Factors"), which also guide the evaluation of a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

---

[6] As part of their Opposition, Respondents attach the Notice of Revocation of Release addressed to Petitioner and dated October 21, 2025. (Declaration of Christopher Jenson ("Jenson Decl."), Docket No. 8-1, Ex. A ("Notice of Revocation of Release"). The Notice states that Petitioner's "case has been reviewed and it [was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (*Id.*). The Notice further states that "[t]his decision has been made based on a review of [Petitioner's] immigration and criminal history." (*Id.*). The Notice, however, contains no factual allegations that led to the custody redetermination. (*See generally id.*). Petitioner contends that he was never given an informal interview. (*See* Petition at 6). Indeed, there is no documentation that an interview took place. (*Id.*; Shah Decl. ¶ 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original).

### B. Conclusions of Law

The Court, in applying the *Winter* Factors, finds they weigh substantially in favor of granting Petitioner's Application – at least with respect to his unlawful detention claims. For the reasons explained herein, the Court **GRANTS** the Application in part, thereby **ORDERING** Respondents to release Petitioner and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court **DENIES** the Application's prayer for injunctive relief relating to Petitioner's removal claims.[7]

*1. The Winter Factors Support Granting Petitioner's Application*

Turning to the *Winter* Factors, the Court finds that they weigh heavily in favor of granting Petitioner's Application – at least with respect to his unlawful detention claims.

---

[7] Respondents assert in passing in the introduction of their Opposition that Petitioner's Application suffers from a procedural defect—namely that it is "not supported by the declaration that FRCP 65 and Local Rule 65-1 require: 'a declaration setting forth the facts and certification required by F.R.Civ.P. 65(b)(1)(A) and (B).'" (Opp'n to Application at 2). Respondents recognize that the Application included a declaration by Petitioner's counsel, but they contend the declaration includes inadmissible hearsay statements. (*Id.*). This disregards the fact that in a TRO posture, the Federal Rules of Evidence are relaxed, and this Court can give even inadmissible evidence some weight "to serve[] the purpose of preventing irreparable harm." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984); *see also Franklin Data Ventures, Inc. v. Veristar, LLC*, No. SACV2200215CJCJDEX, 2022 WL 20273276, at *2 (C.D. Cal. May 17, 2022). Accordingly, the Court finds this argument unavailing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Petitioner fails, however, to demonstrate likelihood of success on the merits with respect to his removal claim. The Court addresses each factor in turn.

      a.    <u>Likelihood of Success on the Merits</u>

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner contends in his Petition that his detention by ICE is unlawful – given the absence of a "statement of reasons as to why [his order of release on supervision] had been revoked," as well as the failure to provide an "interview to discuss the revocation or any other opportunity to be heard" – thereby violating the Fifth Amendment's due process requirement. (Petition at 6). Petitioner also contemplates removal to a country other than Vietnam without having any "opportunity to contest removal . . . on the grounds that he may face persecution or torture if he is removed that country." (*Id.* at 12). Such a move by ICE would also be in violation of the Fifth Amendment's guarantees of due process. The Court addresses Petitioner's likelihood of success on the merits as to his wrongful detention before briefly turning to the removal claim.

      i.    *Detention Claims – Due Process Challenge*

Petitioner argues that his OSUP was revoked in violation of the regulatory safeguards intended to ensure due process for noncitizens. (Petition at 6-14). He contends that his re-detention absent notice as to why his OSUP was revoked, nor an opportunity to challenge the revocation through a prompt, informal interview, amounts to a Fifth Amendment due process violation. (*Id.*). The Court agrees.

First, although the parties dispute whether Petitioner in fact received the Notice of Revocation of Release, the Notice produced by Respondents is facially deficient. (*See* Docket No. 8-1, Ex. A ("Notice of Revocation of Release")). The Notice that Petitioner

**CIVIL MINUTES - GENERAL**

allegedly received fails to provide the "reasons for revocation of his [] release[.]" 8 C.F.R. § 241.13(i)(3). The Notice merely provides a generic statement that Petitioner's "case has been reviewed and [it was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (Notice of Revocation of Release at 1). The Notice further states that "[t]his decision has been made based on a review of [Petitioner's] immigration and criminal history." (*Id.*). The Notice contains no factual allegations that led to the custody redetermination. (*See generally id.*). As the Notice does not "identify any specific changed circumstances[,]" it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025); *Delkash*, 5:25-cv-01675-HDV-AGR, *8. The Notice is plainly insufficient to convey to Petitioner the grounds for revocation.

Second, Petitioner contends he did not receive an "initial informal interview promptly" after being detained, to "afford [him] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3); (*see* Shah Decl. ¶ 3). Respondents have failed to rebut the inference that Petitioner received no interview. Even assuming, *arguendo*, that Petitioner *had* been given an interview, given the absence of any notice as to the grounds for revocation his order of supervision, Petitioner was never "afforded an interview to discuss the revocation or any other opportunity to be heard about the revocation." (Shah Decl. ¶ 3).

"A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures – in particular the failure to give a detainee the required notice and interview – renders the re-detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, *9 (collecting cases); *see also Hoac*, 2025 WL 1993771, at *4 ("Because there is no indication that an informal interview was provided to Petitioner,

the court finds Petitioners is likely to succeed on his claim that his re-detainment was unlawful"). In short, "[t]hese procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid"). Respondents provided no controlling case law that suggests otherwise.[8]

Respondents unconvincingly argue that the "appropriate remedy for any such procedural deficiency would *not* be automatic release from custody, but rather to remedy the specific procedural deficiency that might be established." (Opp'n to Application at 8). Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was

---

[8] Respondents rely on *Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540 (W.D. Wash. Dec. 4, 2018), *rep. and rec. adopted*, No. C18-287-JLR, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019) to support their argument that Petitioner cannot establish "'any actionable injury from this violation of the regulations.'" (Opp'n to Application at 8). However, in *Ahmad*, ICE had secured travel documents for Petitioner and scheduled his removal. 2018 WL 6928540, at *5. There is no evidence of that being the case here. (*See generally* Jenson Decl. (asserting only that "ICE completed and sent a travel document *request* to Vietnam for [Petitioner] to its headquarters for review and submission.")) (emphasis added).
Respondents also cite to *Ton v. Noem, et al.*, No. 5:25-cv-02033-SB-AGR (C.D. Cal. Sept. 3, 2025) (Dkt. No. 17) to suggest that Petitioner needed to submit additional evidence demonstrating Petitioner received no interview. That case is distinguishable, however, because the petitioner's petition was entirely silent as to whether he was interviewed or whether he was given a reason for revocation of his release. Here, to the contrary, Petitioner asserts he was not provided a reason for revocation or an interview.

not given an interview renders his detention unlawful in the first place, necessitating his release. *Delkash*, 5:25-cv-01675-HDV-AGR, *9. The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP. *See, e.g., Hoac*, 2025 WL 1993771, at *7 (concluding that petitioner could only be returned to the status quo by ordering him released because "the last uncontested status of Petitioner was before he was re-detained . . .").

In sum, given Petitioner's showing that "the law and facts *clearly* favor [his] position" with respect to his wrongful detention claims, this first factor weighs in favor of granting the Application with respect to the notice and hearing requirements for revocation of an OSP. *Garcia*, 786 F.3d at 740 (emphasis in original).

      ii. *Third Country Removal – Due Process Challenge*

Petitioner cursorily asserts that the Respondents should be enjoined from "removing Petitioner from the United States." (Application at 3). However, the Court finds a fundamental problem with Petitioner's claim regarding his potential removal to a third country, along with the relief sought. Here, the operative word is "*potential*." In short, where the injury in question appears to be entirely speculative – as there is no indication that his removal is, in fact, imminent – Petitioner lacks standing to assert this claim at this time.

Article III of the Constitution requires district courts to adjudicate only actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish standing, a plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . .[.]'" *Valley Forge Christian College v. Americans United for Separation of Church & State*, *Inc., et al.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). To establish injury in fact, a plaintiff must show he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). A plaintiff is required to show he is "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Petitioner has not averred that he was told he would be removed in the immediate future, either. There is nothing to suggest removal is "actual or imminent," *Lujan*, 504 U.S. at 560, nor that Petitioner is "immediately in danger of sustaining some direct injury[,]" as a result. *Lyons*, 461 U.S. at 102. "[B]ecause standing is a necessary predicate to any exercise of the Court's jurisdiction, the plaintiff and its claims have no likelihood of success on the merits, if the plaintiff lacks standing." *Arpaio v. Obama,* 27 F. Supp. 3d 185, 207 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015) (citations omitted). Given Petitioner appears to lack Article III standing to pursue this claim and the associated relief, Petitioner has not demonstrated likelihood of success on the merits with respect to this claim.[9]

---

[9] The Court, therefore, declines to consider the remainder of the *Winter* Factors for this claim, given that the first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird*, 81 F.4th at 1042 (quoting *Env't Prot. Info. Ctr.*, 968 F.3d at 989).

b. <u>Irreparable Harm</u>

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (". . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ." *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation – with respect to his wrongful re-detention – the Court finds this factor weighs in favor of granting the Application.[10] *Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6. Accordingly, this factor weighs strongly in favor of granting the Application.

---

[10] Respondents do not dispute that there is a presumption of irreparable harm in the context of an alleged constitutional deprivation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

c. <u>Balance of Equities and Public Interest</u>

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac*, 2025 WL 1993771, at *6. "'Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" *Id.* (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash*, 5:25-cv-01675-HDV-AGR, *10. "Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac*, 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the [OSUP] . . . and his economic and familial ties to [California]." *Id.* These factors, therefore, together weigh in favor of granting the Application.

In short, the *Winter* Factors weigh heavily in favor of granting the Application with respect to Petitioner's wrongful detention claims. Accordingly, the Court **GRANTS** the Application, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his re-detention unless and until he is provided proper due process necessary for the revocation of an order of supervision.

### III. CONCLUSION

For the reasons explained herein, the Court **GRANTS** the Application in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an order of supervision. The Court **DENIES** the Application's prayer for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

injunctive relief relating to Petitioner's removal claims.  This TRO will expire in 14 days.  A preliminary injunction hearing is set for December 12, 2025, at 1:30 p.m.  Should the parties wish to submit additional briefing, Petitioner must file any opening brief and related submissions no later than 5:00 p.m. on December 5, 2025, and Respondents must file any opposing brief no later than 5:00 p.m. December 10, 2025.  No reply brief will be accepted.  The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the temporary restraining order.

**IT IS SO ORDERED.**